**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

NUPOWER, LLC,

                Plaintiff,

v.                                  1:26-cv-00494 (AMN/ML)

CHARTER OAK MICROGRID HOLDCO, LLC
and NUPOWER THERMAL, LLC,

                Defendants.

---

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **BOND SCHOENECK & KING, PLLC** | **BRENDAN M. SHEEHAN, ESQ.** |
| One Lincoln Center | **JONATHAN B. FELLOWS, ESQ.** |
| Syracuse, New York 13202 | |
| *Attorneys for Plaintiff* | |
| | |
| **PULLMAN & COMLEY LLC** | **TIMOTHY G. RONAN, ESQ.** |
| 850 Main Street – 8th Floor | |
| Bridgeport, Connecticut 06601 | |
| *Attorneys for Defendants* | |

**Hon. Anne M. Nardacci, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I.     INTRODUCTION

On March 2, 2026, Plaintiff NuPower LLC ("NuPower") commenced a state court action against Defendants Charter Oak Microgrid Holdco, LLC ("Charter Oak") and NuPower Thermal, LLC ("NuPower Thermal") in Albany County, New York, seeking a declaratory judgment and an order requiring Defendants to comply with their purported obligations under the parties' Membership Interest Purchase Agreement ("MIPA"). *See* Dkt. No. 2. On March 26, 2026, Defendants removed this case to federal court pursuant to 28 U.S.C. § 1332 based upon diversity of citizenship. Dkt. No. 1.

Presently before the Court is Plaintiff's motion for a preliminary injunction, *see* Dkt. No. 7, and Defendants' motion to dismiss the Complaint pursuant to Rule 12(b)(7) of the Federal Rules of Civil Procedure for failure to join a necessary and indispensable party. *See* Dkt. No. 8.

For the reasons set forth below, Defendants' motion to dismiss is denied and Plaintiff's motion for a preliminary injunction is also denied.

## II.    BACKGROUND

### A.  The Parties

Both NuPower and NuPower Thermal are Connecticut limited liability companies, and Charter Oak is a Delaware limited liability company.  Dkt. No. 2 at ¶¶ 5-7.  Scale Microgrid Solutions, LLC is an affiliate of Charter Oak, *see* MIPA § 1.2, and Bridgeport Thermal Limited Liability Company, NuPower Thermal Bridgeport LLC, and NuPower Bridgeport FC LLC ("Bridgeport FC") are wholly-owned subsidiaries of NuPower Thermal.  *Id.* at § 1.114.

### B.  Plaintiff's Allegations

On October 2, 2019, the Connecticut Public Utilities Regulatory Authority ("PURA") approved a Power Purchase Agreement ("PPA") between the United Illuminating Company ("UIC"), a regional electric distribution company, and Bridgeport FC, for a transformative renewable energy project located in Bridgeport, Connecticut ("Project"), subject to certain conditions (the "Final Decision").  Dkt. No. 2 at ¶¶ 1, 14.  Specifically, Bridgeport FC was required to submit an updated cost estimate and cost recovery proposal to PURA related to the interconnection portion of the Project, and UIC could not sign and execute the PPA until PURA made a determination regarding Bridgeport FC's electrical interconnection cost responsibility and recovery.  *Id.* at ¶ 14.

On July 22, 2020, UIC submitted an Interconnection Facility Study Report to PURA, which estimated the interconnection portion of the Project to cost $10.23 million. *Id.* at ¶ 15. Then, on July 30, 2020, Bridgeport FC submitted an updated interconnection cost estimate and cost recovery proposal to PURA wherein Bridgeport FC proposed accepting an $8 million recovery cap on the cost of the interconnection portion of the Project, provided that Bridgeport FC be permitted to act as the Engineering, Construction, and Procurement contractor, subject to UIC's oversight. *Id.* at ¶ 16. PURA subsequently approved UIC's Interconnection Facility Study Report, accepted the $8 million recovery cap on interconnection costs, and ordered UIC and Bridgeport FC to execute the PPA on October 28, 2020. *Id.* at ¶ 17.

On February 2, 2024, NuPower and Charter Oak entered into the Membership Interest Purchase Agreement ("MIPA"), pursuant to which Charter Oak purchased all outstanding membership interests in NuPower Thermal from NuPower for a "Purchase Price" that included a "Development Fee." *Id.* at ¶¶ 8-9, 18, 26. Section 2.4 of the MIPA provides that the Development Fee "shall be adjusted to reflect and take into account . . . [a]ny and all decisions from PURA adjusting the cap for any additional electrical interconnection costs, if at all." *Id.* at ¶ 27. Specifically, in the event that the interconnection costs increase above $8 million, and such additional costs are not "covered by the cost-of-service recovery mechanism set forth in the PPA," under the MIPA, the Development Fee will be reduced by eighty cents for every one dollar of such costs, up to $4.8 million. *Id*. Additionally, under Section 2.4(b)(i) of the MIPA, if NuPower requests and directs that a petition be filed with PURA for approval to recover additional costs, including additional interconnection costs, Defendants are obligated to file such petition by or on behalf of NuPower Thermal, and support such petition. *Id.* at ¶ 28. On May 15, 2024, Bridgeport FC filed a motion to PURA for the approval of a revised interconnection cost estimate and cost

recovery proposal, which PURA denied without prejudice. *Id.* at ¶ 19; *see also* Dkt. No. 11-1 at

14-20 (Bridgeport FC's revised proposal to PURA seeking to increase the cap on interconnection

costs to $15 million); Dkt. No. 11-1 at 22-24 (PURA's denial of Bridgeport FC's proposal without

prejudice).

Construction on the Project commenced in June 2025, and construction of the

interconnection portion of the Project commenced in January 2026.  Dkt. No. 2 at ¶¶ 20, 22.

Construction of the fuel cell energy generation portion of the Project is complete, except for the

interconnection portion. *Id.* at ¶ 21.  According to Plaintiff, the interconnection cost estimate that

Bridgeport FC submitted to PURA, which resulted in the $8 million cost recovery cap, materially

understated the costs to design and construct the interconnection portion of the Project, with the

current estimate to complete the interconnection portion exceeding $18 million. *Id.* at ¶¶ 23, 25.

The costs to design and construct the interconnection portion drastically increased due to factors

beyond the parties' control, such as late-stage design and construction changes required by UIC,

rising material and labor costs due to the COVID-19 pandemic, and general inflation. *Id.* at ¶ 24.

Plaintiff alleges that it prepared a petition to reopen and modify PURA's Final Decision

for the limited purpose of requesting that PURA increase the interconnection cost recovery cap

from $8 million to $17.5 million ("Proposed Petition"). *Id.* at ¶ 29.  Plaintiff further alleges that

Defendants breached the MIPA by refusing to file the Proposed Petition with PURA after repeated

requests by Plaintiff. *Id.* at ¶¶ 30-31, 37-39.

### C.  The Instant Motions

On March 2, 2026, Plaintiff commenced this action in New York State Supreme Court in

Albany County seeking declaratory and injunctive relief pursuant to the MIPA and in connection

with the Project.  *See* Dkt. No. 2.  On March 26, 2026, Defendants removed this case to the

Northern District of New York. Dkt. No. 1.[1]

On March 30, 2026, Plaintiff filed a motion for a preliminary injunction, seeking an order requiring at least one of the Defendants to immediately file and support the Proposed Petition with PURA, or cause Bridgeport FC to do the same. Dkt. No. 7. On April 13, 2026, Defendants opposed Plaintiff's motion, contending that Plaintiff cannot satisfy the heightened standard applicable to mandatory preliminary injunctions, *see* Dkt. No. 11, and Plaintiff replied in further support of its motion on May 8, 2026. Dkt. No. 16.

On April 2, 2026, Defendants filed a motion to dismiss the Complaint pursuant to Rule 12(b)(7) of the Federal Rules of Civil Procedure for failure to join a necessary and indispensable party. Dkt. No. 8. Specifically, Defendants contend that Bridgeport FC is a necessary and indispensable party under Rule 19 of the Federal Rules of Civil Procedure because Bridgeport FC is the single counterparty to the PPA, so any relief Plaintiff seeks to adjust the interconnection cost recovery cap would affect the rights, obligations, and interests of Bridgeport FC. Dkt. No. 8-1 at 5. Plaintiff opposed the motion on May 8, 2026, arguing that Bridgeport FC is not a necessary party to this action because Defendants can be ordered to comply with their contractual obligations under the MIPA and, in any event, Defendants and Bridgeport FC are united in interest and are both managed and controlled by the same individuals and entities. *See* Dkt. No. 17.

The Court held a hearing on both motions on June 24, 2026. *See* Dkt. No. 20. Both motions are now ripe for adjudication.

---

[1] On April 6, 2026, Defendants requested this Court's permission to file a motion to transfer venue in this action, *see* Dkt. No. 10, which this Court granted, holding all other pending deadlines in abeyance. Dkt. No. 12. On April 15, 2026, Defendants filed a motion seeking to transfer venue from the Northern District of New York to the Southern District of New York, or, in the alternative, to the District of Connecticut, pursuant to 28 U.S.C. § 1404(a). Dkt. No. 13. On June 1, 2026, this Court denied Defendants' motion. Dkt. No. 19.

### III.   STANDARD OF REVIEW

#### A.  Rule 12(b)(7)

"Dismissal pursuant to Rule 12(b)(7) is required where a plaintiff fails to join an 'indispensable party' as defined under Rule 19." *Yeend v. Akima Glob. Services, LLC*, 347 F.R.D. 405, 410 (N.D.N.Y. 2024) (citing *Fed. Ins. Co. v. SafeNet, Inc.*, 758 F. Supp. 2d 251, 257 (S.D.N.Y. 2010)).  While a Rule 12(b)(6) motion is strictly confined to the pleadings, under Rule 12(b)(7) the court "may go beyond the pleadings to consider extrinsic evidence such as affidavits" while continuing to "accept all factual allegations in the complaint as true." *Id.* (quoting *Gondeck v. JPMorgan Chase Bank, N.A.*, 705 F. Supp. 3d 64, 68 (N.D.N.Y. 2023)).  "The movant carries the burden to prove that the joinder of required parties is not feasible, and that dismissal is required." *Gondeck*, 705 F. Supp. 3d at 68.  "Courts have repeatedly cautioned [] that the Rule 19 inquiry is a fact specific and practical one, which should not be based on formalistic or mechanistic grounds but rather on pragmatic analysis of the effect of a potential party's absence." *Yeend*, 347 F.R.D. at 410 (quoting *Polargrid LLC v. Videsh Sanchar Nigam Ltd.*, No. 04-cv-9578, 2006 WL 2266351, at *9 (S.D.N.Y. 2006)).

Rule 19 sets forth a two-part test for determining if the absence of a nonparty warrants dismissal.  "'First, the absent party must be a 'required' party within the meaning of Rule 19(a); and second, where that party cannot feasibly be joined, the absent party must be indispensable to the case' within the meaning of Rule 19(b)." *Id. (*quoting *Gondeck*, 705 F. Supp. 3d at 68).  An absent party is "required" under Rule 19(a) only if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
>> (i) as a practical matter impair or impede the person's ability to

6

> protect the interest; or
>
> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a). "'[C]omplete relief' pertains only to the parties currently joined, and does not consider additional relief between an existing party and the party whose joinder is sought." *Mar-Can Transportation Co., Inc. v. Loc. 854 Pension Fund*, No. 20-cv-8743, 2022 WL 35588, at *3 (S.D.N.Y. Jan. 4, 2022). Rule 19(a) "stress[es] the desirability of joining those persons in whose absence the court would be obliged to grant partial or 'hollow' rather than complete relief to the parties before the court." *Sunset Homeowners Ass'n, Inc. v. DiFrancesco*, 386 F. Supp. 3d 299, 305 (W.D.N.Y. 2019) (internal quotation marks and citations omitted).

If it is determined that the absent party is "required" and that party cannot feasibly be joined, courts then analyze four factors outlined in Rule 19(b) to "determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed":

> (1) to what extent a judgment rendered in the person's absence might prejudice that person or the existing parties;
>
> (2) the extent to which any prejudice could be lessened or avoided by:
>
> > (A) protective provisions in the judgment;
> >
> > (B) shaping the relief; or
> >
> > (C) other measures;
>
> (3) whether a judgment rendered in the person's absence would be adequate; and
>
> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for non-joinder.

Fed. R. Civ. P. 19(b). "The Second Circuit has instructed courts to take a 'flexible approach' when analyzing Rule 19(b) and vests district courts with substantial discretion in determining whether

7

an absent party's non-joinder makes just resolution of the action impossible." *Yeend*, 347 F.R.D. at 411 (citing *Universal Reinsurance Co., Ltd. v. St. Paul Fire & Marine Ins. Co.*, 312 F.3d 82, 87 (2d Cir. 2002) ("Rule 19(b) [] does not require that every factor support the district court's determination."); *Envirotech Corp. v. Bethlehem Steel Corp.*, 729 F.2d 70, 75 (2d Cir. 1984)). "Federal courts are extremely reluctant to grant motions to dismiss based on nonjoinder[.]" *Am. Trucking Ass'n, Inc. v. New York State Thruway Auth.*, 795 F.3d 351, 357 (2d Cir. 2015) (citation omitted).

## B. Preliminary Injunction

"A preliminary injunction 'is one of the most drastic tools in the arsenal of judicial remedies[.]'" *Two Hands IP LLC v. Two Hands Am., Inc.*, 563 F. Supp. 3d 290, 298 (S.D.N.Y. 2021) (quoting *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007)). "A preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a *clear showing*, carries the burden of persuasion." *Sussman v. Crawford*, 488 F.3d 136, 139-40 (2d Cir. 2007) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)) (emphasis in original). Further, a preliminary injunction is "never awarded as of right," *Ayco Co., L.P. v. Frisch*, 795 F. Supp. 2d 193, 200 (N.D.N.Y. 2011) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)), and the decision to grant such relief "rests in the sound discretion of the district court[.]" *JSG Trading Corp. v. Tray-Wrap, Inc.*, 917 F.2d 75, 79 (2d Cir. 1990).

A party seeking preliminary injunctive relief must establish: "(1) irreparable harm; (2) either a likelihood of success on the merits or both serious questions on the merits and a balance of hardships decidedly favoring the moving party; and (3) that a preliminary injunction is in the public interest." *N. Am. Soccer League, LLC v. U.S. Soccer Fed'n*, 883 F.3d 32, 37 (2d Cir.

2018).  However, in certain circumstances, a plaintiff seeking a preliminary injunction must satisfy a heightened standard.  The heightened standard applies when either "[i] the movant is seeking to modify the status quo by virtue of a *mandatory* preliminary injunction (as opposed to seeking a *prohibitory* preliminary injunction to maintain the status quo), or [ii] where the injunction being sought will provide the movant with substantially all the relief sought and that relief cannot be undone even if the defendant prevails at a trial on the merits[.]"  *Yang v. Kosinski*, 960 F.3d 119, 127-28 (2d Cir. 2020) (internal quotation marks omitted) (emphasis in original); *see also N. Am. Soccer League*, 883 F.3d at 37 n.5 (noting that "the 'status quo' in preliminary-injunction parlance is really a 'status quo ante'" (quoting *Holt v. Cont'l Grp., Inc.*, 708 F.2d 87, 90 (2d Cir. 1983))).

Here, Plaintiff's preliminary injunction seeks to "alter rather than maintain the status quo" by commanding some positive act, namely, by ordering Defendants to immediately file and support the Proposed Petition with PURA, or cause Bridgeport FC to do the same.  *See* Dkt. No. 7; *N.Y. Civil Liberties Union v. N.Y.C. Trans. Auth.*, 684 F.3d 286, 294 (2d Cir. 2012); *see also Barsoumian v. Williams*, 29 F. Supp. 3d 303, 319 (W.D.N.Y. 2014) (applying heightened standard to preliminary injunction that requested reinstatement to residency position in medical school's residency program), *aff'd sub nom. Barsoumian v. Univ. at Buffalo*, 594 F. App'x 41 (2d Cir. 2015).  Accordingly, under the heightened standard, a preliminary injunction may only be granted upon (i) a strong showing of irreparable harm, and (ii) a showing of a clear or substantial likelihood of success on the merits.  *See JTH Tax, LLC v. Agnant*, 62 F.4th 658, 669 (2d Cir. 2023) (citation omitted); *see also Faus on behalf of E.F. v. Indian River Cent. Sch. Dist.*, No. 25-cv-453, 2025 WL 2490438, at *4 (N.D.N.Y. Aug. 29, 2025) (quoting *Yang*, 960 F.3d at 128).

## IV.    DISCUSSION

### A.  Rule 12(b)(7) Motion

#### 1.   Whether Bridgeport FC is a Required Party[2] Under Rule 19(a)

##### i.   Whether Complete Relief Can Be Accorded Without Bridgeport FC (Rule 19(a)(1)(A))

Defendants maintain that the Court cannot accord complete relief under Rule 19(a)(1)(A) without Bridgeport FC as a party to this action, given that Plaintiff seeks an order compelling Defendants to file and support a petition with PURA pursuant to the PPA, yet the PPA is a contract between Bridgeport FC and UIC.  Dkt. No. 8-1 at 9-10.  Thus, under the PPA, Bridgeport FC— not Defendants—is the only entity that can seek relief before PURA, and accordingly, "Defendants cannot unilaterally alter Bridgeport FC's rights and obligations under the PPA or before PURA without Bridgeport FC's participation." *Id.*  In response, Plaintiff argues that this Court *can* accord complete relief among existing parties by ordering Defendants to comply with their contractual obligations under the MIPA.  Dkt. No. 17 at 7-8.

The Court agrees with Plaintiff.  Pursuant to Rule 65 of the Federal Rules of Civil Procedure, this Court has the authority to bind Bridgeport FC to the preliminary injunction Plaintiff seeks, despite Bridgeport FC not being a party to this action.  Rule 65(d) provides that injunctions may bind "the parties, their 'officers, agents, servants, employees, and attorneys,' and 'other persons who are in active concert or participation' with them." *New Falls Corp. v. Soni Holdings, LLC*, No. 19-cv-449, 2022 WL 4357410, at *3 (E.D.N.Y. Sept. 20, 2022) (quoting Fed. R. Civ. P.

---

[2] While Defendants use the term "necessary party" in arguing the applicability of Rule 19(a), the Rule itself uses the term "required party," Fed. R. Civ. P. 19(a), and courts in this District often use those terms synonymously. *See, e.g.*, *Gondeck*, 705 F. Supp. 3d at 68 ("required" party under Rule 19(a)); *Walsh v. Ip*, No. 22-cv-886, 2023 WL 3377629, at *5 (N.D.N.Y. May 11, 2023) ("necessary" party under Rule 19(a)).  Consistent with the language in Rule 19, the Court will use the term "required party" throughout this Memorandum-Decision & Order.

65(d)).  "This [rule] is derived from the common[ ]law doctrine that a decree of injunction not only binds the parties but also those identified with them in interest, in 'privity' with them, represented by them or subject to their control."  *Regal Knitwear Co. v. N.L.R.B.*, 324 U.S. 9, 14 (1945).  Put another way, when an injunction has been issued against a corporation, "a subsidiary corporation or an independent corporation acting in active concert also may be bound by the order."  *Eletson Holdings Inc. v. Levona Holdings Ltd.*, No. 23-cv-7331, 2025 WL 1558380, at *9 (S.D.N.Y. June 2, 2025) (quoting C. Wright & A. Miller, 11A Federal Practice and Procedure § 2956 (3d ed. 2025)).  "In this vein, . . . when the subsidiary aids, abets, or acts in concert with the parent, the decree is binding on the subsidiary."  *Id.* (citations omitted); *see also Gilead Scis., Inc. v. Safe Chain Sols., LLC*, 753 F. Supp. 3d 173, 185 (E.D.N.Y. 2024) (noting that "third parties 'who are in active concert or participation" with the enjoined parties can themselves be enjoined'" (quoting *Regal Knitwear*, 324 U.S. at 13-14)).

"Courts in this Circuit have found 'active concert' between non-parties and already-enjoined parties in cases where an enjoined party is substantially intertwined with a non-party, including the shared occupation of office space, payment of employee expenses between the non-party and enjoined party, considerable control by the enjoined party over the non-party's operations, and other substantial interconnections[.]" *Gilead Scis.*, 753 F. Supp. 3d at 186 (quoting *John Wiley & Sons, Inc. v. Book Dog Books*, LLC, 327 F. Supp. 3d 606, 638 (S.D.N.Y. 2018)).  In this case, the record demonstrates that NuPower Thermal exercises considerable control over Bridgeport FC's operations.  First, the MIPA expressly defines Bridgeport FC as a wholly-owned subsidiary of NuPower Thermal.  *See* MIPA § 1.114; *see also* Dkt. No. 2 at ¶ 10.  Second, Charter Oak, pursuant to the MIPA, purchased all outstanding membership interests in NuPower Thermal, collectively with its subsidiaries, including Bridgeport FC.  Dkt. No. 2 at ¶ 9.  Thus, the Court

finds that Bridgeport FC "is closely associated with or controlled by one or more of the existing

Defendants, thereby satisfying the "active concert or participation" requirement. *See, e.g.*, *Havens*

*v. James*, 76 F.4th 103, 115 (2d Cir. 2023) (noting that the "necessary inquiry" in determining

whether parties are in "active concert" is whether the non-party is "acting independently" of the

named defendant).

Accordingly, the Court can accord complete relief between the existing parties without

requiring Bridgeport FC to join as a named party.[3]

### ii. Whether Bridgeport FC Claims an Interest in the Action (Rule 19(a)(1)(B)(i))

Defendant next argues that Bridgeport FC is a required party under Rule 19(a)(1)(B)(i)

because it has a legally protectable interest that will be impaired if this action proceeds without

Bridgeport FC's presence. *See* Dkt. No. 8-1 at 10-11. In order to satisfy Rule 19(a)(1(B)(i), "[t]he

absent party must 'claim an interest' in the subject matter of the litigation." *Kasselakis v. Tiptree,*

*Inc.*, No. 23-cv-2756, 2024 WL 3252632, at *12 (S.D.N.Y. July 1, 2024) (quoting *Peregrine*

*Myanmar Ltd. v. Segal*, 89 F.3d 41, 49 (2d Cir. 1996)). "A third party may not claim it on the

absent party's behalf." *Id.* (citing *Peregrine Myanmar Ltd.*, 89 F.3d at 49). However, merely

having an interest in the outcome of the litigation, "even a very strong interest," is not enough

---

[3] To the extent that this Court does award injunctive relief, "a district court can enforce an injunction against a nonparty only if it has personal jurisdiction over that nonparty." *Tiffany (NJ) LLC, Tiffany & Co. v. China Merchants Bank*, 589 F. App'x 550, 553 (2d Cir. 2014), *as amended* (Sept. 23, 2014) (citing *Canterbury Belts Ltd. v. Lane Walker Rudkin, Ltd.*, 869 F.2d 34, 40 (2d Cir. 1989)). Bridgeport FC, as a party to the MIPA, "unconditionally accept[ed] the exclusive jurisdiction of [this Court] and irrevocably agree[d] to be bound by any judgment rendered thereby[.]" MIPA § 10.6. Accordingly, Bridgeport FC has consented to and is subject to the personal jurisdiction of this Court. *See WFMC 2016-LC25 W. Bay Area Boulevard LLC v. Tyler*, No. 21-cv-8865, 2022 WL 17487730, at *4 (S.D.N.Y. Dec. 7, 2022) ("Parties can consent to personal jurisdiction through forum-selection clauses in contracts." (quoting *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 103 (2d Cir. 2006))).

under Rule 19(a)(1)(B)(i).  *MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 387 (2d Cir. 2006).  "Nor is it enough for a third party to be adversely affected by the outcome of the litigation."  *Id.*  "Rather, necessary parties under [Rule 19(a)(1)(B)(i)] are only those parties whose ability to protect their interests would be impaired *because of* that party's absence from the litigation."  *Id.* (emphasis in original).  Indeed, "courts often conclude that a suit will not impair or impede an absentee's interests because the absentee's interests are adequately represented by an existing party, in other words, if there is another party in the suit with virtually identical interests who would be advancing virtually the same legal and factual positions."  *Baring Indus., Inc. v. Rosen*, No. 24-cv-5606, 2025 WL 307654, at *2 (S.D.N.Y. Jan. 27, 2025) (internal quotation marks, citations, and alterations omitted).

Such is the case here.  Even assuming that Bridgeport FC has an interest in this litigation, its interest is adequately represented by NuPower Thermal.  As a wholly-owned subsidiary of NuPower Thermal, Bridgeport FC has the same interests as NuPower Thermal in this action.  *See, e.g.*, *Alpha Founders Holding, LLC v. Magellan Health, Inc.*, No. 17-cv-6225, 2018 WL 1247405, at *8 (E.D.N.Y. Mar. 9, 2018) (finding that absent party's interests are adequately represented by the parties, "who are the only shareholders of [the absent party]"); *EMR (USA Holdings), Inc. v. Goldberg*, No. 18-cv-7849, 2019 WL 5537878, at *12 (S.D.N.Y. Oct. 25, 2019) (finding that parent plaintiff can adequately represent the interests of its wholly owned subsidiaries, as they "both have the same interests in protecting their confidential information and that these interests are aligned"); *Polargrid*, 2006 WL 2266351, at *10 (holding that plaintiff's subsidiaries and affiliates were not required parties because their interests in the litigation would be well represented by plaintiff); *Bayer Corp. v. Smithkline Beecham PLC*, No. 95-cv-5582, 1996 WL 34164, at *5 (S.D.N.Y. Jan, 29, 1996) (subsidiaries with an interest in parent's action were not

required parties where "both subsidiaries [we]re fully owned by, and their interests [we]re identical to, their respective parents"). Defendants fail to articulate why Bridgeport FC's interests would not be adequately represented by the existing Defendants in this action.

Thus, while Bridgeport FC may have an interest in the outcome of this litigation, no harm to that interest would be caused by Bridgeport FC's absence from the litigation. Accordingly, the Court finds that Bridgeport FC is not a required party under Rule 19(a)(1)(B)(i).

### iii. Whether Bridgeport FC's Absence Subjects Defendants to a Substantial Risk of Inconsistent Obligations (Rule 19(a)(1)(B)(ii))

Finally, Defendants cannot satisfy Rule 19(a)(1)(B)(ii) because they are not at risk of incurring multiple or inconsistent obligations. Defendants contend that they would be caught in conflicting obligations if this Court orders them to file and support a PURA petition (or cause Bridgeport FC to do the same) and Bridgeport FC objects or declines to support the petition. *See* Dkt. No. 8-1 at 11. Defendants further argue that any judgment by the Court interpreting Section 2.4(b)(i) of the MIPA could create inconsistent obligations for Bridgeport FC under the PPA and before PURA. *Id.*

First, "[i]nconsistent obligations occur when a party is unable to comply with one court's order without breaching another court's order concerning the same incident." *DSM Nutritional Prods., LLC v. Provitas, LLC*, No. 20-cv-476, 2020 WL 7389050, at *8 (N.D.N.Y. Dec. 16, 2020) (citations omitted). Even if this Court orders Defendants to file and support a PURA petition, or cause Bridgeport FC to do the same, Defendants have not offered a scenario wherein they would be unable to comply with this Court's order without breaching another court's order concerning the same issues. *Cf. Green Haven Prison Preparative Meeting of the Religious Soc'y of Friends v. New York State Dep't of Corr. & Cmty. Supervision*, No. 18-cv-8497, 2026 WL 880529, at *9

14

(S.D.N.Y. Mar. 31, 2026) (rejecting defendants' argument about duplicative lawsuits with conflicting outcomes as speculative).

Moreover, the substantial risk of incurring multiple or inconsistent obligations must also be *caused* by the absence of the non-party. *See Mar-Can Transportation Co.*, 2022 WL 35588, at *3 (emphasis added); *see also Cofine, S.A.P.I. de C.V., SOFOM E.N.R. v. McNish*, No. 25-cv-475, 2026 WL 352448, at *5 (D. Conn. Feb. 9, 2026) (noting that "the Court considers only whether 'existing parties' will be subject to multiple or inconsistent obligations in the absence of a third party" (quoting Fed. R. Civ. P. 19(a)(1)(B)(ii))). Here, NuPower Thermal and Bridgeport FC are in privity with one another, and Bridgeport FC would be bound by any judgment of the Court in this matter under the doctrine of *res judicata*. As a wholly-owned subsidiary of NuPower Thermal, Bridgeport FC's interests are sufficiently represented by NuPower Thermal. *See supra* Section IV(A)(1)(ii); *see, e.g.*, *Pittman v. Scholastic Corp.*, No. 24-cv-1407, 2024 WL 2747802, at *3 n.4 (S.D.N.Y. May 22, 2024) (deeming parent and wholly-owned subsidiary in privity with one another for purposes of *res judicata* and collecting cases); *EMR (USA Holdings), Inc.*, 2019 WL 5537878, at *13 ("Because the [absent, wholly-owned subsidiaries] would be bound by any judgment in this Court, there is little threat of piecemeal litigation."). Again, Defendants have not offered any evidence indicating otherwise.

As a result, Defendants have not shown a "real possibility" that Bridgeport FC's absence from this action will leave the existing Defendants with multiple or inconsistent obligations under Rule 19(a)(1)(B)(ii).

### 2. Whether it is Feasible to Join Bridgeport FC and Whether Bridgeport FC is an Indispensable Party Under Rule 19(b)

Since the Court has determined that Bridgeport FC is not a required party to this action, the Court declines to address whether Bridgeport FC is an indispensable party under Rule 19(b).

15

*See Baring Indus.*, 2025 WL 307654, at *3 n.2 (citing *Viacom Int'l, Inc. v. Kearney*, 212 F.3d 721, 724 (2d Cir. 2000) ("If a party does not qualify as necessary under Rule 19(a), then the court need not decide whether its absence warrants dismissal under Rule 19(b).")); *see also Fed. Ins. Co.*, 758 F. Supp. 2d at 260 (finding that the court "need not analyze whether [the parties] can be joined or whether, under Rule 19(b), the action should be dismissed in light of their absence").

### B. Preliminary Injunction Motion

#### 1. Strong Showing of Irreparable Harm

"The showing of irreparable harm is perhaps the single most important prerequisite for the issuance of a preliminary injunction." *P.G. v. Jefferson Cnty., New York*, No. 21-cv-388, 2021 WL 4059409, at *3 (N.D.N.Y. Sept. 7, 2021) (quoting *V.W. by & through Williams v. Conway*, 236 F. Supp. 3d 554, 588 (N.D.N.Y. 2017)). "To establish irreparable harm, the moving party must show an 'injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages.'" *St. Joseph's Hosp. Health Ctr. v. Am. Anesthesiology of Syracuse, P.C.*, 131 F.4th 102, 106 (2d Cir. 2025) (quoting *New York v. U.S. Dep't of Homeland Sec.*, 969 F.3d 42, 86 (2d Cir. 2020)). "Put differently, an asserted injury is irreparable when it 'cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation.'" *Aegis Cap. Corp. v. Digital Ally, Inc.*, No. 25-cv-9938, 2025 WL 3523214, at *4 (S.D.N.Y. Dec. 9, 2025) (quoting *State Farm Mut. Auto. Ins. Co. v. Tri-Borough NY Med. Practice P.C.*, 120 F.4th 59, 80 (2d Cir. 2024)). "Monetary 'compensation need only be 'adequate' for preliminary relief to be unwarranted, not perfect.'" *St. Joseph's Hosp. Health Ctr.*, 131 F.4th at 106 (quoting *Daileader v. Certain Underwriters at Lloyds London Syndicate 1861*, 96 F.4th 351, 358 (2d Cir. 2024)).

Plaintiff argues that without a preliminary injunction, it would be impossible to calculate

monetary damages. Dkt. No. 7-1 at 23. Specifically, Plaintiff alleges that if PURA does not rule on the Proposed Petition at the time the Project reaches Mechanical Completion or Commercial Operation, as defined by the MIPA, there is a high likelihood of dispute regarding the timing and amount of the Development Fee, which cannot easily be ascertained. *Id.* at 22. Additionally, Plaintiff argues that the missed opportunity for PURA to "focus singularly" on the Proposed Petition also cannot be quantified or ascertained with precision. *Id.* In contrast, Defendants contend that this action is a straightforward breach of contract dispute over the amount and timing of Plaintiff's Development Fee, which is the type of claim that can be estimated and compensated at law. Dkt. No. 11 at 14. Specifically, Defendants contend that Plaintiff sold its interest in the Project when it entered into the MIPA, and thus, Plaintiff's only remaining interest is in recovering the maximum amount of the Development Fee pursuant to Section 2.4(b)(i) of the MIPA, which establishes the exact formula by which the Development Fee is adjusted. *Id.* at 14-15.

The Court agrees with Defendants. "Damages are the 'classic remedy for breach of contract.'" *Home Life Health Care, LLC v. Dorfman*, No. 25-cv-526, 2025 WL 2721618, at *6 (E.D.N.Y. Sept. 24, 2025) (quoting *Ide v. Brit. Airways PLC*, 529 F. Supp. 3d 73, 87 (S.D.N.Y. 2021)). Here, Plaintiff's request for a declaratory judgment and injunctive relief rest on an underlying alleged breach of the MIPA, for which damages are the appropriate remedy. "Courts generally are reluctant to grant preliminary injunctions in breach of contract actions, unless there are damages that are difficult to measure and there is a risk of loss of goodwill, reputation, or business opportunities." *Expedia, Inc. v. United Airlines, Inc.*, No. 19-cv-1066, 2019 WL 1499269, at *5 (S.D.N.Y. Apr. 5, 2019) (citation omitted); *see also CRP/Extell Parcel I, L.P. v. Cuomo*, 394 F. App'x 779, 781 (2d Cir. 2010) (upholding an award of injunctive relief "where a movant claimed money damages that were hard to measure *plus* irreparable harm, including loss

17

of reputation, goodwill and business opportunities" or "where a  movant established that a former employee offered unique services, and absent injunctive relief, the company would likely lose a client relationship that would otherwise have produced an indeterminate amount of business in years to come" (internal quotation marks and citations omitted) (emphasis in original)).

Neither is the case here.  The Second Circuit case upon which Plaintiff relies bears little resemblance to the case at bar.  In *Tom Doherty Assocs., Inc. v. Saban Ent., Inc.*, 60 F.3d 27, 38 (2d Cir. 1995), plaintiff, a book publisher, filed suit against a licensor of children's characters for breach of contract, specifically regarding plaintiff's right of first refusal to publish children's books based upon defendants' characters, namely the Power Rangers.  *Id.* at 30-32.  The Second Circuit held that plaintiff established irreparable harm, in part, because plaintiff would lose the "wholly unique opportunity" to become a major publisher of children's books, which includes the loss of the opportunity to attract additional authors and owners of characters. *Id.* at 38.  The Circuit found that such loss of prospective business and goodwill from additional children's authors or owners of characters is "largely indeterminate," as "the value of a Power Ranger's book to [plaintiff's] fortunes as a children's publisher is beyond ready calculation." *Id.*  In the case at bar, Plaintiff cannot demonstrate the loss of a unique business opportunity.  Nor can Plaintiff establish a loss of prospective goodwill, as Plaintiff sold all of its membership interests in the Project to Charter Oak. *See* Dkt. No. 2 at ¶¶ 8-9.

The fact "[t]hat damages are difficult to measure does not necessarily make otherwise compensable harm irreparable." *CRP/Extell Parcel I*, 394 F. App'x at 781; *see also Daileader*, 96 F.4th at 358 ("Of course, [plaintiff] wishes to have those funds now rather than later.  But compensation need only be 'adequate' for preliminary relief to be unwarranted, not perfect."). Here, Plaintiff is only entitled to the Development Fee, and its amount is determined under Section

2.4(b)(i) of the MIPA. Specifically, the Development Fee is reduced by eighty cents for every one dollar of interconnection costs in excess of the $8 million cost recovery cap, subject to a maximum aggregate reduction of $4.8 million. *See* Dkt. No. 2 at ¶ 27 (citing MIPA § 2.4(b)(i)). Thus, the Development Fee is subject to a finite range of no more than $8.75 million and no less than $3.95 million. *See* MIPA § 1.22 (defining the Development Fee as $8.75 million, adjusted pursuant to Section 2.4 of the MIPA). Accordingly, the maximum amount of monetary damages that Plaintiff may suffer is a known quantity, and any deviation from that amount is ascertainable and calculable pursuant to the terms of the MIPA. And as Defendants noted, if the Court ultimately finds that Defendants breached the MIPA due to their delay in filing the Proposed Petition, and such delay resulted in the reduction of Plaintiff's Development Fee, Plaintiff could be compensated via interest or any other formula to compensate for the time value of money. *See* Dkt. No. 11 at 16; *see also CSX Transp., Inc. v. Niagara Lubricant Co.*, 143 F. Supp. 3d 73, 76 (W.D.N.Y. 2015) (noting that "the purpose of prejudgment interest is to compensate parties for the loss of the use of money they were entitled to receive, taking into account the 'time value' of money" (citations omitted)); *Jordan v. New York City Dep't of Educ.*, No. 24-cv-3045, 2025 WL 2938314, at *1 (2d Cir. Oct. 16, 2025) (noting that "[a] temporary loss of income . . . does not typically constitute irreparable harm because monetary damages awarded 'in the ordinary course of litigation' will generally provide sufficient compensation" (quoting *Sampson v. Murray*, 415 U.S. 61, 90 (1974)). Thus, Plaintiff has failed to show that monetary damages are an inadequate remedy at law.

Additionally, even assuming *arguendo* that Plaintiff was able to establish that monetary damages are an inadequate remedy, Plaintiff has not offered sufficient evidence indicating that PURA would approve the Proposed Petition if it were filed immediately, particularly given the fact that PURA denied Bridgeport FC's earlier motion to increase the interconnection cost

19

recovery cap to $15 million. *See* Dkt. No. 2 at ¶ 19; *see also* Dkt. No. 11-1 at 14-24. In other words, PURA may deny the Proposed Petition, even if Defendants file the Proposed Petition immediately. Thus, Plaintiff fails to establish that its purported harm "is anything more than a possibility." *CRP/Extell Parcel I*, 394 F. App'x at 782; *see also Doe v. Rensselaer Polytechnic Inst.*, No. 18-cv-1374, 2019 WL 181280, at *2 (N.D.N.Y. Jan. 11, 2019) (noting that the Second Circuit has held that "a party who seeks a preliminary injunction . . . must show that irreparable harm is likely to occur," rather than "a mere possibility" (internal quotation marks and citations omitted)).

Accordingly, the Court finds that Plaintiff has failed to make a strong showing of irreparable harm in the absence of a preliminary injunction.

\* \* \*

Because a "finding of no showing of irreparable harm is dispositive," *Grand River Enter. Six Nations*, 481 F.3d at 68, the Court need not address the remaining factors, including whether Plaintiff is likely to succeed on the merits of its claims. *See, e.g.*, *Harley Marine NY, Inc. v. Moore*, No. 23-cv-163, 2023 WL 3620720, at *9 (N.D.N.Y. Mar. 24, 2023) (declining to address the remaining elements necessary to obtain injunctive relief where the plaintiff failed to demonstrate the probability of irreparable harm); *see also JBR, Inc. v. Keurig Green Mountain, Inc.*, 618 F. App'x 31, 36 (2d Cir. 2015) ("Because irreparable harm is the '*sine qua non* for preliminary injunctive relief,' we conclude that [plaintiff's] motion for a preliminary injunction fails at the irreparable harm stage, and we do not reach the other components of the preliminary injunction inquiry." (citation omitted)).

Accordingly, given that Plaintiff has failed to establish a strong showing of irreparable harm, Plaintiff's preliminary injunction motion is denied.

## V.    CONCLUSION

Accordingly, the Court hereby

**ORDERS** that Defendants' motion to dismiss pursuant to Rule 12(b)(7), Dkt. No. 8, is

**DENIED**; and the Court further

**ORDERS** that Plaintiff's motion for a preliminary injunction, Dkt. No. 7, is **DENIED**; and

the Court further

**ORDERS** that the Clerk serve a copy of this Order on the parties in accordance with the

Local Rules.

**IT IS SO ORDERED.**

Dated:  June 30, 2026
        Albany, New York

Anne M. Nardacci
U.S. District Judge

21